IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CASE NO. 1:25-cr-106-ECM |
| | ) [WO] |
| THOMAS KENNON WINDHAM | ) |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION AND BACKGROUND**

This case is set for jury selection and trial on July 7, 2025, in Dothan, Alabama. The Defendant is charged in a one-count indictment with possession of a firearm and ammunition by a convicted felon on or about May 24, 2023, in violation of 18 U.S.C. § 922(g)(1). (Doc. 1). This Opinion addresses the parties' motions in limine, including the Defendant's proffered affirmative defense that he believed his civil rights had been restored when he possessed the firearm. (Docs. 30, 39, 40).[1]

The Court begins by noting what is not in dispute. In his briefing, the Defendant "agree[d] to the following stipulations": (1) "prior to May 24, 2023, [the Defendant] had been convicted of a felony for which the punishment was greater than one year;" (2) "on May 24, 2023, [the Defendant] knew that he had previously been convicted of a felony for which the punishment was greater than one year;" and (3) "on May 24, 2023, [the Defendant] owned and possessed a Maverick Arms, model 88, 12 gauge shotgun, which is

---

[1] The Court construes the Defendant's briefing (doc. 39) and the Government's briefing (doc. 40) as containing motions in limine.

a firearm and which traveled in interstate commerce." (Doc. 39 at 1–2). The Defendant's prior felony convictions are from the State of Alabama. Further, the Court finds, and the parties agree, that 18 U.S.C. § 921(a)(20) is an affirmative defense for which the defendant bears the burden of production. *See United States v. Jackson*, 57 F. 3d 1012, 1016 (11th Cir. 1995) ("[T]he defendant, and not the government, bears the burden—at least the burden of going forward with evidence—concerning the [§ 921(a)(20)] . . . exception."); *see also United States v. Shamsid-Deen*, 61 F.4th 935, 949 (11th Cir. 2023) (describing *Jackson* as determining that the defendant bears the burden of production on a § 921(a)(20) defense).

Additionally, the Defendant seeks to put "forth the following affirmative evidence": (1) "[i]n 2020, [the Defendant] had completed all of his prior state sentences"; (2) "[a]fter being released from state custody in 2020 but prior to May 24, 2023, [the Defendant] was registered to vote and allowed to vote"; (3) "[a]fter being released from state custody in 2020 but prior to May 24, 2023, [the Defendant] was called for jury duty[, ] was ultimately struck, but did appear and was paid the customary fee for his jury service"; (4) [the Defendant] suffers from a Mild Intellectual Disability and Mild Neurocognitive Disorder"; (5) "[the Defendant]'s IQ is between 77 and 79, his reading ability is at a 7th grade level, . . . , his spelling ability is at the 6th grade level, his reading comprehension is at the 10th grade level, and his math ability is at the 5th grade level"; and (6) "[the Defendant] has what is referred to as 'Limited Cognitive Capacities' ('LCC's')"; and "[t]hose with LCC's typically exhibit difficulties with verbal comprehension, reasoning, and misconceptions of legal information and situations." (Doc. 39 at 2).

Four issues are before the Court: (1) which party bears the burden of persuasion on the affirmative defense set forth in 18 U.S.C. § 921(a)(20) and the applicable standard (subjective vs. objective); (2) the admissibility of testimony from the Defendant's expert witness, a psychiatrist; (3) the admissibility of the Defendant's prior felony convictions; and (4) the admissibility of references to two female witnesses as "sex workers" and their alleged motivation in visiting the Defendant's home. On June 24, 2025, the Court ordered briefing on these issues (doc. 35), which the parties provided (docs. 39, 40). Upon review of the briefing and relevant law, the Court resolves these issues as follows.

## II. DISCUSSION

**A.     Affirmative Defense in § 921(a)(20): Restoration of Civil Rights**

Section 922(g) criminalizes the possession of firearms and ammunition by certain categories of persons. To secure a conviction under § 922(g), "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif v. United States*, 588 U.S. 225, 237 (2019). One such category of persons is anyone "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year," 18 U.S.C. § 922(g)(1), commonly referred to as "felons." To prove that the Defendant violated § 922(g)(1), the Government must prove beyond a reasonable doubt that:

> (1) the Defendant knowingly possessed a firearm in or affecting interstate or foreign commerce;
> (2) before possessing the firearm, the Defendant had been convicted of a felony—a crime punishable by imprisonment for more than one year; and

    (3) at the time the Defendant possessed the firearm, the Defendant knew he had previously been convicted of a felony.

Eleventh Circuit Pattern Jury Instruction O34.6 (Apr. 2024), *located at* https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCriminalPatternJuryInstructionsRevisedAPR2024.pdf.

    However, § 921(a)(20) provides an affirmative defense based on enumerated postconviction events, including restoration of the defendant's civil rights. It states in relevant part that "[a]ny conviction . . . for which a person . . . has had civil rights restored shall not be considered a conviction" for purposes of § 922(g)(1). 18 U.S.C. § 921(a)(20). The relevant "civil rights" are the right to vote, the right to serve on a jury, and the right to hold public office. *United States v. Thompson*, 702 F.3d 604, 607 (11th Cir. 2012); *see also Logan v. United States*, 552 U.S. 23, 28 (2007). The restoration of only one of these civil rights "is insufficient to satisfy § 921(a)(20)." *Thompson*, 702 F.3d at 607.

    At trial, the Defendant seeks to argue that he "did not believe he was in the 'relevant category of persons barred from possessing a firearm' and did not believe he was a felon as that term is used in §§ 922(g) and 921(a)(20), because he believed he had had his 'civil rights restored.'" (Doc. 39 at 4).[2] The parties agree that under binding Eleventh Circuit caselaw, § 921(a)(20) presents an affirmative defense for which the Defendant bears the burden of production. *See Jackson*, 57 F.3d at 1016; *see also Shamsid-Deen*, 61 F.4th at

---

[2] The Defendant also raises a related but distinct argument based on *Rehaif*'s recognition that a mistake of law can supply a defense where "a defendant 'has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct,' thereby negating an element of the offense." *See* 588 U.S. at 234. The Court addresses this argument in greater detail later in this Opinion.

949. Two questions remain: (1) which party bears the burden of persuasion on the affirmative defense, and (2) what that party must prove or disprove—the defendant's subjective belief about whether his civil rights had been restored, or whether his civil rights had actually been restored.

Applying the logic of *Shamsid-Deen*, 61 F.4th 935, the Court determines the burden of persuasion for the § 921(a)(20) affirmative defense lies with the Defendant. In *Shamsid-Deen*, the Eleventh Circuit analyzed § 922(g)(9), which prohibits firearm possession by those who have been convicted of a "misdemeanor crime of domestic violence," and § 921(a)(33), which defines "misdemeanor crime of domestic violence" and provides an exception to that definition. Section 921(a)(33) defines "misdemeanor crime of domestic violence" as an offense that is both a misdemeanor and "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by" a person with a specified relationship with the victim. In turn, § 921(a)(33)(B)(i)(II) provides that a person "shall not be considered to have been convicted of [a misdemeanor crime of domestic violence]" unless, in a case where the person was entitled to a jury trial, the person "knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise." The question before the court was whether the defendant or the government bore the burden of persuasion for a § 921(a)(33)(B)(i)(II) defense. *See Shamsid-Deen*, 61 F.4th at 947–49.

In determining which party had the burden of persuasion, the Eleventh Circuit explained that it needed to answer "whether § 921(a)(33)(B) affirmative defenses negate, 'contradict or tend to disprove any element of' § 922(g)(9), which criminalizes possession

5

of a firearm by a person who has been convicted of a misdemeanor crime of domestic violence, or § 921(a)(33)(A), which defines what constitutes a misdemeanor crime of domestic violence." *Shamsid-Deen*, 61 F.4th at 947–48 (citations omitted). If the affirmative defense negated, contradicted, or disproved an element of the offense (§ 922(g)(9)), the government would bear the burden of persuasion. *See id.* at 947. Otherwise, the defendant would bear the burden. *Cf. id.*

The court concluded that § 921(a)(33)(B) defenses "do not negate an element of the § 922(g)(9) crime" and that the defendant therefore "bears the burden of persuasion." *Id.* at 949. The court explained that "affirmative defenses that negate elements of offenses are typically ones that negate a defendant's criminal state of mind," such as the defense of necessity. *Id.* at 948. The court further explained that those defenses which "negate" an element of the offense "are of a different category than defenses that appear as statutory exceptions or provisos." *Id.* The court reasoned that § 921(a)(33)(B) "does not negate a domestic violence misdemeanant's criminal state of mind; it merely creates exceptions to the default rule that an offense meeting the elements in [the statute] qualifies as a misdemeanor crime of domestic violence." *Id.* at 948. Moreover, the court explained that § 921(a)(33)(B) allows a defendant "who did not knowingly and intelligently waive his right to a jury trial 'to avoid liability because' the absence of a valid waiver 'negates a conclusion of guilt even though the necessary *mens rea*' for the misdemeanor crime of domestic violence 'was present.'" *Id.* at 948–49 (italics in original) (quoting *United States v. Dixon*, 548 U.S. 1, 7 (2006)). But, the court continued, § 921(a)(33)(B) "doesn't negate or tend to disprove that [the defendant] committed that crime. It doesn't invalidate his

6

conviction. It just allows him to avoid having that conviction used as a qualifying predicate for a § 922(g)(9) charge." *Id.* at 949.

The Court concludes that *Shamsid-Deen*'s analysis and conclusion applies with equal force here. The relevant prohibited class in § 922(g)(1) comprises those who have "been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." Section 921(a)(20) "merely creates exceptions to the default rule that" a crime punishable by imprisonment for a term exceeding one year qualifies as a conviction for purposes of § 922(g)(1). *See Shamsid-Deen*, 61 F.4th at 948. Like the absence of a valid jury trial waiver, restoration of a defendant's civil rights "doesn't negate or tend to disprove that [the defendant] committed [a felony]. It doesn't invalidate his conviction. It just allows him to avoid having that conviction used as a qualifying predicate for a [§ 922(g)(1)] charge." *See id.* at 949. While the Defendant attempts to distinguish *Shamsid-Deen* from this case, the Court finds those efforts unpersuasive. Thus, the Court concludes that the Defendants bears both the burdens of production and persuasion for a § 921(a)(20) defense.

The Court now must address whether § 921(a)(20) embodies an objective or a subjective standard. The Defendant suggests that he can meet his burden with evidence that he subjectively believed that his civil rights had been restored. By contrast, the Government embraces an objective standard, contending that the Defendant must show that his civil rights were actually restored. After considering the parties' arguments, the Court concludes that it is an objective standard.

"The starting point"—and here, the ending point—"for statutory interpretation is the language of the statute." *United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023).

7

Section 921(a)(20) provides that "[a]ny conviction . . . for which a person . . . *has had civil rights restored* shall not be considered a conviction" for purposes of § 922(g)(1). 18 U.S.C. § 921(a)(20) (emphasis added). "Nothing in the statutory language asks what a person believes." *See United States v. Burnett*, 641 F.3d 894, 896 (7th Cir. 2011) (concluding that § 921(a)(20) "sets an objective standard"). Thus, the Court concludes that § 921(a)(20) "sets an objective standard," *see id.*, and a defendant's subjective belief that his civil rights have been restored is insufficient as a matter of law for the defendant to avail himself of the § 921(a)(20) affirmative defense.

## B. Testimony of Dr. Lokken

The Government also argues that the testimony of Dr. Lokken, a defense expert witness, should be excluded because it is irrelevant. Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." But "[i]rrelevant evidence is not admissible." FED R. EVID. 402. The Defendant argues that Dr. Lokken's testimony is relevant to support his defense that he made a *bona fide* mistake of law about whether his civil rights were restored, and specifically "whether his understanding of his rights being restored is reasonable." (Doc. 39 at 8). According to the Defendant, Dr. Lokken's testimony is necessary to "establish[] that [the Defendant] has a lower IQ and that people with similar IQ ranges can sometimes be confused by complicated legal concepts." (*Id.*).

The Defendant argues that he made a mistake of law about whether his civil rights were restored, and that he genuinely—but mistakenly—believed they had been restored

8

because he was registered to vote and voted, and he was called for jury duty, although he was ultimately struck. The Defendant cites *Rehaif*'s recognition that a mistake of law can supply a defense where "a defendant 'has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct,' thereby negating an element of the offense."[3] 588 U.S. at 234. In particular, *Rehaif* explained that "[a] defendant who does not know that he is an alien 'illegally or unlawfully in the United States' does not have the guilty state of mind that the statute's language and purposes require." *Id.* According to the Defendant, he had a mistaken impression concerning the legal effect of a collateral matter—his exercise or attempted exercise of certain civil rights—and that mistake resulted in a misunderstanding about whether his civil rights had been restored, and by extension, whether he was prohibited from possessing a firearm or ammunition.

As the Defendant acknowledges, his subjective belief regarding the restoration of his rights must be reasonable. (*See* doc. 39 at 8). Assuming without deciding that the Defendant may raise as a defense a mistake of law about whether his civil rights were

---

[3] Given the Court's conclusion that the restoration of rights exception in § 921(a)(20) does not negate an element of the § 922(g) offense, the Court questions whether *Rehaif*'s statement would apply to a mistaken belief about whether rights were restored.

9

restored,[4] the Court concludes that on this record, the Defendant's mistake is not reasonable as a matter of law. The Defendant claims he mistakenly believed his civil rights were restored because he was registered to vote and allowed to vote, and he was called for jury duty, although he was ultimately struck. The Defendant does not claim that he took any action to have his civil rights restored, *cf. Thompson*, 702 F.3d at 606 (explaining that a defendant who had been convicted of a felony in Alabama had applied to the State of Alabama for restoration of his civil rights), or that he received any notice or communication from the State of Alabama indicating that his civil rights had been restored. For purposes of this analysis, the Court will accept as true Dr. Lokken's opinions concerning the Defendant's lower IQ and his ability to understand legal concepts. At most, the Defendant's proffered evidence may be sufficient to support a finding that the Defendant reasonably believed his right to vote had been restored. But without more, the evidence is insufficient to support a finding that the Defendant reasonably believed his right to *serve* on a jury or his right to hold public office had been restored.[5] Because restoration of only the right to vote "is insufficient to satisfy § 921(a)(20)," see *Thompson*, 702 F.3d at 607,

---

[4] At least two circuits have suggested that this defense, or a substantially similar one, is available post-*Rehaif* to rebut the knowledge element in a § 922(g) prosecution. *United States v. Sjodin*, --- F.4th ----, 2025 WL 1646179, at *7 (10th Cir. June 11, 2025) (suggesting that a defendant's sincere but mistaken belief that his rights had been restored could be a viable defense in light of *Rehaif*, but not resolving the ultimate question because the defendant failed to proffer evidence about his belief); *United States v. Boyd*, 999 F.3d 171, 181 (3d Cir. 2021) ("On its face, [the] argument [that the defendant lacked knowledge about his status as a defense rooted in an exception] is plausible in light of *Rehaif* . . . by arguing a *bona fide* mistake of law, meaning that he 'has a mistaken impression concerning the legal effect of some collateral matter.'" (citation omitted)) (declining to decide whether a mistake of law defense was available in this context because the government provided "overwhelming evidence" to demonstrate the defendant's knowledge).

[5] Indeed, the record before the Court does not foreclose the possibility that the Defendant was struck because it was determined that he had a felony conviction.

the Defendant's mistaken belief that his civil rights had been restored, even if genuine, was not reasonable as a matter of law. This evidence is thus insufficient to support a mistake of law defense here.[6]

Because the Defendant's proffered mistake of law defense is unreasonable as a matter of law, Dr. Lokken's testimony is irrelevant and due to be excluded. Consequently, the Government's motion in limine is due to be granted.

## C.     Prior Felony Convictions

Next, the Defendant argues that the Government should be prohibited from introducing evidence of his prior felony convictions. The Defendant concedes that on May 24, 2023, he "knew that he had previously been convicted of a felony for which the punishment was greater than one year[.]" (Doc. 39 at 2, para. 2). Notwithstanding this stipulation, the Government seeks to admit evidence of the Defendant's five prior felony convictions to rebut the Defendant's defense that he believed his civil rights had been restored. (Doc. 40 at 13–14).

Under longstanding Supreme Court precedent, when a defendant stipulates to the existence of a prior conviction, the government may not introduce evidence of the underlying facts for that conviction when the sole purpose of the evidence is to prove the element of prior conviction. *Old Chief v. United States*, 519 U.S. 172, 191 (1997). The Government—acknowledging *Old Chief*—argues that the Defendant's "novel defense triggers the necessity to fully set out his background." (Doc. 40 at 14). Put differently, the

---

[6] The Court may revisit its ruling if there is additional evidence which bears on the issue.

Government asks this Court to admit evidence regarding the Defendant's five prior convictions to negate his restoration of civil rights defense, despite his unconditional stipulation that on May 24, 2023, he "knew that he had previously been convicted of a felony." (Doc. 39 at 2, para. 2).  The Government believes these convictions "weigh[] against his position that somehow his civil rights were restored with no action on his part." (Doc. 40 at 13).

While *Old Chief* prevents the Government from introducing evidence of past convictions for the sole purpose of proving the prior conviction element of § 922(g)(1) when the Defendant stipulates to their existence, such evidence may be admissible for another legitimate purpose. *See* FED R. EVID. 404(b).  The Government argues that other legitimate purpose here is to rebut the Defendant's defense that he believed his civil rights had been restored.  But as the Court explained above, this defense is not available to the Defendant.  And again, the Defendant has stipulated that on the date of the instant offense, he had been convicted of a felony, and he knew that he had been convicted of a felony. Thus, there is no legitimate purpose for the evidence of the Defendant's prior convictions, and this situation falls squarely within the holding of *Old Chief*.  Consequently, the Government's evidence of the Defendant's prior convictions is inadmissible, and the Defendant's motion in limine is due to be granted.[7]

---

[7] The Court may revisit its ruling if the Defendant places the existence of his previous convictions or his knowledge thereof at issue.

**D.     Occupation and Motivation Evidence**

The Defendant also seeks to prohibit the Government from referring to the two women who came to his home as "sex workers" or explaining the women's motivation for visiting the defendant as "provid[ing] sexual services in exchange for payment" because it is irrelevant, overly prejudicial, or both. (Doc. 30). Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence may be excluded "if its probative value is substantially outweighed . . . [by] unfair prejudice." FED. R. EVID. 403. As the Eleventh Circuit explained, "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offenses charged." *United States v. Cenephat*, 115 F.4th 1359, 1365 (11th Cir. 2024) (quoting *Old Chief*, 519 U.S. at 180). "That different ground is 'commonly, though not necessarily, an emotional one.'" *Id.* (quoting *Old Chief*, 519 U.S. at 180). "But Rule 403 imposes 'no requirement that the government choose the least prejudicial method of proving its case.'" *Id.* (quoting *United States v. Dixon*, 698 F.2d 445, 446 (11th Cir. 1983)). Regardless of prejudicial value, "[i]rrelevant evidence is not admissible." FED R. EVID. 402.

The Defendant argues that the women's alleged occupations as "sex workers" and the women's alleged motivation for visiting the defendant as "provid[ing] sexual services in exchange for payment" should be excluded because they are irrelevant to the ultimate issue. (*See* doc. 30 at 2–3). The Defendant also claims that even if this evidence is relevant,

13

the Court should still exclude it because the prejudicial effect substantially outweighs the probative value. (*Id.* at 3).  The Government counters that explaining the women's motivation—and the Defendant's role in bringing them to his residence—is necessary to tell "the true version" of the story. (Doc. 33 at 1).  In support, the Government relies on an Eleventh Circuit opinion affirming a district court's decision to allow the Government to present evidence in a § 922(g) case that the defendant committed a drive-by shooting. *Cenephat*, 115 F.4th at 1365–66.

After careful review of the parties' arguments and relevant caselaw, the Court finds the Defendant's motion in limine is due to be granted.  The Court notes the Government can tell a version of events that references the Defendant's display of money, inviting the women to his residence, and the events that followed without explicitly referring to the women as "sex workers" or their motivation for going to the Defendant's house as "provid[ing] sexual services in exchange for payment."  Those facts are not integral to the ultimate resolution of the case and are not relevant to the ultimate issue:  whether the Defendant is guilty of being a felon in possession of a firearm or ammunition.  To the extent they are relevant, the Court finds that the prejudicial effect substantially outweighs the minimal relevance they provide.  Moreover, the Court is persuaded that omitting those facts from the narrative will not confuse or mislead the jury.

The Court's conclusion is consistent with *Cenephat*.  In *Cenephat*, the district court noted that the defendant "placed his intent"—knowingly possessing the firearm and ammunition—"at issue." 115 F.4th at 1364.  Here, there is no dispute that the Defendant knowingly possessed the firearm because the Defendant stipulates to that fact.  The

specifics about the women's alleged occupations or motivation would not have "any tendency to make a fact [that is of consequence] more or less probable." FED. R. EVID. 401. Indeed, the Government can tell a coherent story at trial without reference to the women's alleged occupations or their alleged motivations in obtaining money in exchange for sex. Consequently, the Court finds that the Defendant's motion in limine (doc. 30) is due to be granted.

### III.  CONCLUSION

For the reasons stated above, and for good cause, it is

ORDERED as follows:

1. The Defendant bears the burdens of production and persuasion for the § 921(a)(20) affirmative defense. Additionally, his subjective belief that his civil rights were restored is insufficient as a matter of law;

2. The Defendant's motion in limine (doc. 30) is GRANTED to the extent that the Government is prohibited from (1) referring to the women involved as "sex workers" or anything similar, and (2) making any reference to the women's intention to provide sexual services in exchange for money when visiting the Defendant's home. However, if the Defendant opens the door or otherwise makes this evidence relevant during the course of the trial, the Court may revisit its ruling, but the Government must request a side bar and obtain advance permission from the Court before making any reference to these women's alleged occupations or perceived motivations for visiting the Defendant's home;

3. The Defendant's motion in limine (doc. 39) is GRANTED to the extent that the Government is prohibited from introducing evidence of the Defendant's prior

convictions. However, if the Defendant opens the door or otherwise makes this evidence relevant during the course of the trial, the Court may revisit its ruling, but the Government must request a side bar and obtain advance permission from the Court before making any reference to the Defendant's specific prior convictions;

4. The Government's motion in limine (doc. 40) is GRANTED to the extent that the Defendant may not introduce the testimony of Dr. Lokken as proposed in the Defendant's briefing. However, if the Government opens the door or otherwise makes this testimony relevant during the course of the trial, the Court may revisit its ruling, but the Defendant must request a side bar and obtain advance permission from the Court before making any reference to Dr. Lokken's proposed testimony;

5. Jury selection and trial will commence as scheduled on **July 7, 2025 at 10:00 a.m.** in **Dothan**, Alabama.

DONE this 1st day of July, 2025.

                                                /s/ Emily C. Marks
                                                EMILY C. MARKS
                                                CHIEF UNITED STATES DISTRICT JUDGE